IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


Chris A. Carr,                                    :

                        Plaintiff               :        Civil Action 2:07-cv-01053

        v.                                         :

Robert C. Bradley, *et al.*,              :        Magistrate Judge Abel

                        Defendants            :


# ORDER

Plaintiff Chris A. Carter brings this action against defendants Robert C. Bradley, Gregory M. Hurd, Richard L. Lanning, Max B. Norris, II, and Melanie L. Provenzano under 42 U.S.C. § 1983 asserting claims for false arrest, unconstitutional search and seizure, false imprisonment, retaliation in violation of the First Amendment, and civil conspiracy.

This matter is before the Court on plaintiff Chris A. Carr's October 20, 2008 motion for summary judgment (doc. 27) and defendants Robert C. Bradley, Gregory M. Hurd, Richard L. Lanning, Max B. Norris, II, and Melanie L. Provenzano's January 12, 2009 cross-motion for summary judgment on qualified immunity (doc. 32). Plaintiff's January 13, 2009 motion to strike defendant's motion for summary judgment (doc. 34); and January 15, 2009 motion for reconsideration of the Court's Order filed January 7,

2009, and to strike defendants' response to plaintiff's motion for summary judgment (doc. 35) are also before the Court.

## I.    Allegations in the Amended Complaint

On November 17, 2006, Carr was a passenger in a motor vehicle that was stopped by defendant Bradley on State Route 13 in Athens County, Ohio because the license plate light was out. Amended Compl. at ¶ 7. Carr's infant son was in an infant safety seat in the rear passenger side of the vehicle. *Id.* at ¶ 10. Bradley approached the car and informed the driver why she was stopped. *Id.* at ¶ 9. Bradley asked the driver of the car to get out, and they walked away from the car toward defendant's cruiser. *Id.* at ¶ 10.  Bradley did not tell Carr to remain in the car prior to Carr exiting the car. *Id.* at ¶ 13.

Carr's son began to cry, so Carr exited the vehicle in order to open the rear passenger side door to help the crying infant. *Id.* at ¶¶ 14-15. When Carr exited the vehicle, Bradley loudly demanded that Carr get back in the car. *Id.* at ¶ 16. Carr told Bradley that he was trying to assist his son, who was crying. *Id.* at ¶ 17.  Bradley did not respond to Carr's statements other than to tell him to get back into the car. *Id.* at ¶ 18. Carr did not advance beyond the rear passenger side of the vehicle and was not threatening in any manner. *Id.* at ¶ 19.

The driver attempted to show defendant Bradley that she had the baby's bottle, and Carr said that he had a small child in the car. *Id.* at ¶¶ 21-22. Bradley told him to get back in the car.  *Id.* at ¶ 22. Before getting back into the car, Carr said, "This is bullshit."

*Id.* at ¶ 24. The time that elapsed from the moment when Carr exited the vehicle until he got back into the car was approximately 25 seconds. *Id.* at ¶ 26.

Defendants Hurd, Lanning, Norris, and Provenzano arrived at the scene. *Id.* at ¶ 29. Prior to detaining, searching, arresting, imprisoning, and charging Carr with a crime, defendants Bradley, Hurd, Lanning, Norris, and Provenzano discussed, planned, and coordinated Carr's charges and arrest. *Id.* at ¶¶ 30-32. Bradley left the scene prior to Carr's arrest. *Id.* at ¶ 33. Hurd, Lanning, Norris, and Provenzano arrested Carr. *Id.* at ¶ 35. The complaint alleges that defendants had no reasonable suspicion to initially detain or search him and no probable cause to arrest him. *Id.* at ¶¶ 41-43. Defendants intentionally, wantonly, and maliciously seized, searched, arrested, imprisoned, and prosecuted Carr without a search warrant, without an arrest warrant, without reasonable suspicion to believe that Car had committed or was committing a crime, and without probable cause to believe that Carr had committed or was committing a crime. *Id.* at ¶ 48. Defendants seized, searched, arrested, imprisoned, charged, and prosecuted Carr in retaliation for engaging in the speech that was protected by the First Amendment to the United States Constitution. *Id.* at ¶ 50.

## II.     Arguments of the Parties

### A.     Plaintiff Carr

Carr argues that he is entitled to summary judgment on his claim for false arrest because the officer lacked probable cause to arrest him, particularly in light of his rights under the First Amendment. Section 2917.11(E)(3)(a) of the Ohio Revised Code, Ohio's

disorderly conduct statute, has been narrowly construed by the Ohio Supreme Court so as to maintain its constitutionality. For speech to be the basis for a disorderly conduct charge, the speech must amount to "fighting words" as that term is used in First Amendment jurisprudence, or fall into some other exception. A refusal to cooperate with police and yelling and screaming are not sufficient to prove that Carr caused alarm pursuant to section 2917.11(B) of the Ohio Revised Code because there was no evidence that he was physically aggressive or out of control. Bradley acknowledges that Carr did not say or do anything that was threatening. Carr argues that his only activity that could support a charge for disorderly conduct is his protected speech because he did not do anything else. In the span of 26 seconds, Carr attempted to explain that he needed to assist his infant before he complied with Bradley's order to get back in the vehicle. Carr's statement that "this is bullshit" is far milder than speech in cases where courts have found the language protected. Furthermore, his statement obviously criticized state action, and it was not a personal comment or insult directed at the officer. Much more aggressive speech toward police officers has been found protected. By saying "this is bullshit" followed by compliance with the officer's order does not rise to the level of words that would by their very utterance inflict injury or incite an immediate breach of the peace.

Carr also argues that he is entitled to summary judgment on his claims for false imprisonment and illegal search and seizure of his person because arrests and

subsequent custodial detentions violate the Fourth Amendment if they lack probable cause.

Carr also argues that he is entitled to summary judgment on his claim for retaliation for exercising his First Amendment rights. Carr maintains that it is undisputed that he engaged in speech that was constitutionally protected. An arrest on a criminal charge and imprisonment constitute an adverse action, which would likely chill a person from exercising the right to free speech. Although Bradley asserts that he does not recall whether he heard the speech or not, it is clear from the nature of the case that the arrest was, at least in part, a response to the speech because speaking was the only thing that Carr was doing. Bradley also admitted that Car's speech while he was still in the car when Bradley approached the vehicle was part of his reasoning for arresting Carr.

Plaintiff further argues that defendant Bradley is not entitled to qualified immunity. It has long been established that arrests without probable cause violate the Fourth Amendment, and any reasonable officer should know that. Defendant Bradley violated the First and Fourth Amendments when he arrested Carr for attempting to explain for 26 seconds that his child was crying and required his assistance. The case law defining those constitutional violations is well-established and long-standing, and any reasonable officer should be aware that the arrest in the case was unlawful.

## B. Defendants Bradley, Hurd, Lanning, Norris, and Provenzano

Defendants Bradley, Hurd, Lanning, Norris, and Provenzano opposed plaintiff's motion for summary judgment and have filed a cross-motion for summary judgment on the basis of qualified immunity.

Defendants argue that roadside vehicle stops are risky and volatile and pose unique dangers for police officers. The risk of harm to the police and the occupants of the stopped vehicle is minimized if the officers routinely exercise unquestioned command of the situation. According to defendants, Carr was arrested for disorderly conduct after he challenged Bradley's unquestioned control of a traffic stop by exiting a vehicle in a hostile manner while Bradley was conducting field sobriety tests on Carr's girlfriend late at night on a dark road. Because Carr was intoxicated, argumentative and belligerent, Bradley was compelled to draw his taser and call for immediate backup.

Defendants maintain that plaintiff is not entitled to summary judgment because there is a material issue of fact. Defendants maintain that the video does not capture the complete interaction between the parties. At his deposition, Bradley testified that as he approached the vehicle, Carr was being somewhat rowdy. Bradley advised him to calm down. He believed that Carr was attempting to interfere with his investigation of a possible drunk driving case. Carr, however, maintains that he was just sitting in the passenger seat and denied being upset. The video does not capture this initial interaction clearly. Defendants maintain that Carr's actions in the car are material

6

because it impacted Bradley's perception that Carr was potentially hostile when he exited the car. Because Bradley contends that Carr was so rowdy and upset during his initial encounter with the officer, his exiting the vehicle, arguing with the officer, and ignoring multiple commands to return to the car could be viewed in a different light.

Defendants argue that the officers had probable cause to arrest Carr. Defendants maintain that the case law relied on by Carr does not preclude a finding that Carr's confrontational actions and language constituted "turbulent behavior" even if it was not likely to provoke violence by Bradley. The Ohio Supreme Court held that the provision of the statute prohibiting "violent or turbulent behavior" does not concern the prohibited speech and expression portion of the statute.

Defendants contend that plaintiff cannot satisfy the first factor of the qualified immunity analysis. Although the right to not be arrested without probable cause is a clearly established right, Carr was not arrested without probable cause. A police in Bradley's situation could have reasonably believed that Carr's arrest was unlawful because Carr was not allowing him to exercise unquestioned control of a traffic stop. Even if the Court concluded that Bradley had no probable cause to make the disorderly conduct arrest, he is entitled to qualified immunity if he could have reasonably believed that probable cause existed to arrest Carr for the charge.

**III.    Summary Judgment**

Summary judgment is governed by Rule 56(c) of the Federal Rules of Civil Procedure which provides:

> The judgment sought shall be rendered forthwith if the
> pleadings, depositions, answers to interrogatories, and
> admissions on file, together with the affidavits, if any, show
> that there is no genuine issue as to any material fact and that
> the moving party is entitled to judgment as a matter of law.

"[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986) (emphasis in original); *Kendall v. The Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984).

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 247-248. The purpose of the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. *Lashlee v. Sumner*, 570 F.2d 107, 111 (6th Cir. 1978). Therefore, summary judgment will be granted "only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is, . . . [and where] no genuine issue remains for trial, . . . [for] the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try." *Poller v. Columbia Broadcasting Systems, Inc.*, 368 U.S. 464, 467 (1962); accord, *County of Oakland v. City of Berkeley*, 742 F.2d 289, 297 (6th Cir. 1984).

In a motion for summary judgment the moving party bears the "burden of showing the absence of a genuine issue as to any material fact, and for these purposes,

the [evidence submitted] must be viewed in the light most favorable to the opposing

party." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970) (footnote omitted).

Inferences to be drawn from the underlying facts contained in such materials must be

considered in the light most favorable to the party opposing the motion. *United States v.*

*Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Watkins v. Northwestern Ohio Tractor Pullers*

*Association, Inc.*, 630 F.2d 1155, 1158 (6th Cir. 1980).

     If the moving party meets its burden and adequate time for discovery has been

provided, summary judgment is appropriate if the opposing party fails to make a

showing sufficient to establish the existence of an element essential to that party's case

and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*,

477 U.S. 317, 322 (1986). The mere existence of a scintilla of evidence in support of the

opposing party's position will be insufficient; there must be evidence on which the jury

could reasonably find for the opposing party. *Anderson*, 477 U.S. at 251 (quoting

*Improvement Co. v. Munson*, 14 Wall. 442, 448 (1872)). As is provided in Fed. R. Civ. P.

56(e):

> When a motion for summary judgment is made and
> supported as provided in this rule, an adverse party may not
> rest upon the mere allegations or denials of his pleading, but
> his response, by affidavits or as otherwise provided in this
> rule, must set forth specific facts showing that there is a
> genuine issue for trial. If he does not so respond, summary
> judgment, if appropriate, shall be entered against him.

Thus, "a party cannot rest on the allegations contained in his . . . [pleadings] in opposition to a properly supported motion for summary judgment against him." *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 259 (1968)(footnote omitted).

IV.    **Discussion**

    A.    **Arrest without Probable Cause**

On November 17, 2006, Ohio State Highway Patrol Trooper Robert Bradley stopped a vehicle in which plaintiff Chris Carr was a passenger because the license plate light was out. Bradley Dep. 10:6-7. He approached the driver's side and observed that the car was occupied by the driver (Melissa Chorniak Carr), a front seat passenger (Chris Carr) and an infant in the rear passenger seat. *Id.* 10:15-22. Bradley told the driver the reason for the stop and asked for her driver's license and registration. Chorniak responded that her license was suspended. *Id.* 18:2-6. Apparently, Bradley smelled liquor on Chorniak's breath. *See id.* 17:19-24. He asked her to get out of the car for a field sobriety test. *Id.* 19:8-17.

Bradley testified that Carr was upset because they were stopped for a minor infraction and that the trooper was going give Chorniak a field sobriety test. *Id.* 12:22-13:2. Bradley described Carr as loud and rowdy but could not recall any specific comments Carr made. *Id.* 13:21-14:4. He did not engage in any physically threatening behavior. Chorniak said that she had picked Carr up at a bar and that he was lit. *Id.* 14:1-2. Bradley warned Carr to calm down. *Id.* 19:5-6.

The cruiser was parked behind the stopped vehicle. Bradley conducted the field sobriety test in front of the cruiser. *Id.* 19:12-17. While Bradley was administering the field sobriety test to Chorniak, Carr got out of the stopped vehicle. This confrontation between Bradley and Carr will be discussed in greater detail below. Briefly, Bradley immediately ordered Carr to get back into the vehicle. After attempting to explain that he wanted to look in the back seat to calm the crying infant, Carr got back into the front passenger seat in less than 30 seconds after Bradley's first command. He at no time advanced toward Bradley or made any threatening gestures.

Bradley issued a citation charging that Carr engaged in "persistent disorderly by intoxication" in violation of section 2917.11(E)(3)(A). *See* doc. 36-2. Section 2917.11(E)(3)(A) provides: "Disorderly conduct is a misdemeanor of the fourth degree if . . . [t]he offender persists in disorderly conduct after reasonable warning or request to desist." Ohio Rev. Code § 2917.11(E)(3)(a). Persistent disorderly conduct by intoxication is prohibited by section 2917.11(B), which provides:

> (B) No person, while voluntarily intoxicated, shall do either of the following:
> (1) In a public place or in the presence of two or more persons, engage in conduct likely to be offensive or to cause inconvenience, annoyance, or alarm to persons of ordinary sensibilities, which conduct the offender, if the offender were not intoxicated, should know is likely to have that effect on others;
> (2) Engage in conduct or create a condition that presents a risk of physical harm to the offender or another, or to the property of another.

Ohio Rev. Code § 2917.11(B). In their response to plaintiff's motion for summary judgment, defendants argue that Carr's conduct violated section 2917.11(A)(1):

No person shall recklessly cause inconvenience, annoyance, or alarm to another by doing any of the following:
(1) Engaging in fighting, in threatening harm to persons or property, or in violent or turbulent behavior. . . .

Ohio Rev. Code  2917.11(A)(1).

The Fourth Amendment of the United States Constitution states:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend IV. An arrest without probable cause constitutes an unreasonable seizure in violation of the Fourth Amendment. *Donovan v. Thames*, 105 F.3d 291, 298 n. 7 (6th Cir.1997); *Ingram v. City of Columbus*, 185 F.3d 579, 592 -593 (6th Cir. 1999). "A police officer has probable cause only when he discovers reasonably reliable information that the suspect has committed a crime. *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000). A determination of whether probable cause existed requires an examination of the totality of the circumstances and only considers the information possessed by the arresting officer at the time of the arrest. *Harris v. Bornhorst*, 513 F.3d 503, 511 (6th Cir. 2008).  Generally, the existence of probable cause in a § 1983 action presents a jury question "unless there is only one reasonable determination possible. *Fridley v. Hirrighs*, 291 F.3d 867, 872 (6th Cir. 2002.)

To determine whether officers had probable cause to arrest an individual, courts examine the law of the jurisdiction at the time of the occurrence. *Id.* at 594 -595. Carr

was charged with disorderly conduction in violation of section 2917.11 of the Ohio

Revised Code, which provides in relevant part:

> (A) No person shall recklessly cause inconvenience, annoyance, or alarm
> to another by doing any of the following:
> (1) Engaging in fighting, in threatening harm to persons or property, or in
> violent or turbulent behavior;
> (2) Making unreasonable noise or an offensively coarse utterance, gesture,
> or display or communicating unwarranted and grossly abusive language
> to any person; . . . .
> (B) No person, while voluntarily intoxicated, shall do either of the
> following:
> (1) In a public place or in the presence of two or more persons, engage in
> conduct likely to be offensive or to cause inconvenience, annoyance, or
> alarm to persons of ordinary sensibilities, which conduct the offender, if
> the offender were not intoxicated, should know is likely to have that effect
> on others;
> (2) Engage in conduct or create a condition that presents a risk of physical
> harm to the offender or another, or to the property of another.

Ohio Rev. Code § 2917.11(A)-(B). In *State v. Hoffman*, the Ohio Supreme Court held that:

> [A] person may not be punished under R.C. 2917.11(A)(2) for "recklessly
> caus(ing) inconvenience, annoyance, or alarm to another," by making an
> "offensively coarse utterance," or "communicating unwarranted and
> grossly abusive language to any person," unless the words spoken are
> likely, by their very utterance, to inflict injury or provoke the average
> person to an immediate retaliatory breach of the peace.

*State v. Hoffman*, 57 Ohio St.2d 129, 133 (1979). In applying *Hoffman*, Ohio courts have

set aside convictions for disorderly conduct when the behavior exhibited surpassed the

alleged "rowdiness" of Carr:

> The prosecution argues that Barnes's refusal to cooperate with police and
> his "yelling and screaming" was sufficient evidence to prove that Barnes
> had caused "alarm" pursuant to R.C. 2917.11(B)(1). We are unpersuaded.
> The prosecution did not offer any evidence that Barnes was physically
> aggressive or out of control. *See, e.g., State v. Bay* (1998), 130 Ohio App.3d
> 772, 721 N.E.2d 421. And "yelling and screaming" is not punishable as a

criminal act unless the words spoken amount to fighting words. *See State v. Hoffman* (1979), 57 Ohio St.2d 129, 387 N.E.2d 239. Fighting words are words that are likely, by their very utterance, to inflict injury or to provoke the average person into an immediate retaliatory breach of the peace. *Chaplinsky v. New Hampshire* (1942), 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031; *Cincinnati v. Karlan* (1974), 39 Ohio St.2d 107, 314 N.E.2d 162. The record is void of any evidence demonstrating that Barnes's words could be considered "fighting words."

*State v. Barnes*, No. C-050174,  2006 WL 890834 at *2 (Ohio App. 1 Dist., Apr. 7, 2006). In

*City of Middleton v. Carpenter*, No. CA2006-01-004, 2006 WL 1972061 (Ohio App. 12 Dist.

Jul. 17, 2006), a conviction for disorderly conduct was vacated:

Appellant's words in this case were, "This is f-ing bullshit" and "I hate cops." After reviewing the record and the relevant case law, we find that appellant's language did not constitute "fighting words." The record indicates that appellant's words were not specifically directed to a particular officer, but were a vulgar commentary about the situation. Appellant's language was comparable to the language, "the police are worthless, this is f[ucking] bullshit," found not to be "fighting words" in *Grince*. Accordingly, appellant could not have been convicted of "making an offensively coarse utterance" or communicating "grossly abusive language" under MCO 648.04(a)(2), which we must construe to prohibit only "fighting words." *See Wood*, 112 Ohio App.3d at 627, 679 N.E.2d 735 (applying comparable R.C. 2917.11[A][2] ).

This court has held that vulgar language, when accompanied by aggressive behavior, can be sufficient for a disorderly conduct conviction based on "turbulent behavior." *State v. Rajeski*, Warren App. No. CA2002-11-120, 2003-Ohio-2783, ¶ 8. In *Rajeski*, vulgar language directed to a police officer was accompanied by the defendant "storming out of the apartment complex towards * * * [the officer] in an aggressive manner." Id. at ¶ 2. *See, also, State v. Jackson* (Nov. 20, 1998), Montgomery App. No. 17128, 1998 WL 801367, *4 ("turbulent behavior" where defendant, in addition to verbally berating officer, grabbed officer's shirt). However, unlike *Rajeski* and *Jackson*, the statement of facts in this case did not indicate that appellant's vulgar language was accompanied by aggressive or threatening behavior toward the officers. Therefore, the statement of facts did not support a conviction for disorderly conduct under MCO 648.04(a)(1) based on "turbulent behavior."

*Id.* at *2 -3.

Defendants maintain that Carr was arrested because there was probable cause to believe that Carr engaged in turbulent behavior based upon the loudness or aggressiveness of his speech , rather than the content of his speech. "Vulgar language, when accompanied by aggressive behavior, can be sufficient for a disorderly conduct conviction based on 'turbulent behavior.'" *City of Middletown v. Carpenter*, No. CA2006-01-004, 2006 WL 1972061 at * 3 (Ohio App. 12 Dist., July 17, 2006)(quoting *State v. Rajeski*, No. CA2002-11-120, 2003 WL 21257968 at * 1 (Ohio App. 12 Dist., June. 2, 2003). "The word, "turbulent," in the context of Ohio's disorderly conduct statute, refers to tumultuous behavior or unruly conduct characterized by violent disturbance or commotion." *State of Ohio v. Reeder*, 18 Ohio St.3d 25, 27( 1985).

The cases relied upon by defendants are distinguishable from the instant case. In *Reeder*, an altercation took place between a customer and an employee of animal shelter. *Id.* at 25.  The defendant jabbed and pushed the customer, used abusive language, and threatened to send him to jail. *Id.* In reversing the appellate court, the Ohio Supreme Court held that the term "turbulent behavior" was not unconstitutionally vague. *Id.* at 27. The *Reeder* defendant's conduct, however, was considerably different from that of Carr. Turbulent behavior has been found where the defendant stormed towards the officer aggressively in addition to using vulgar language and where the defendant grabbed the officer's shirt while verbally berating the officer. *State v. Rajeski*, No. CA2002-11-120, 2003 WL 21257968 at * 1 (Ohio App. 12 Dist., Jun. 2, 2003); *State v.*

*Jackson*, No. 17128, 1998 WL 801367 at * 1 (Ohio App. 2 Dist. Nov. 20, 1998). In comparison, Carr's conduct simply cannot be characterized as aggressive or threatening behavior.

In *State of Ohio v. Carter*, No. 22444, 2005 WL 2301778 (Ohio App. 9 Dist, Aug. 24, 2005), the defendant was convicted of disorderly conduct. Carter's conduct also is distinguishable from that of Carr. The court upheld Carter's conviction on the basis of his behavior:

> It was appellant's conduct, and not the content of his speech, which resulted in his conviction. *See, State v. Semler* (1993), 90 Ohio App.3d 369, 629 N.E.2d 481. This Court has previously upheld a conviction pursuant to R.C. 2917.11(B)(1), where the evidence of the defendant's conduct indicated that he was "loud, very antagonistic, used profanity, and was offensive." *State v. Butler* (1989), 63 Ohio App.3d 157, 161, 578 N.E.2d 485. In this case, the trial court found that appellant was yelling profanities in a public area, where bowling alley patrons were coming and going. The trial court found that appellant's conduct, specifically his yelling of profanities in a busy parking lot, would likely be offensive to a reasonable person. This Court agrees. Appellant's conduct here in yelling "f* * * you" and "f* * * the police" in a bowling alley parking lot while patrons came and went, coupled with his friend's inability to calm him down and stop his yelling, if believed, would permit a rational trier of fact to find that the essential elements of the crime of disorderly conduct had been proved beyond a reasonable doubt. *See, Semler*, 90 Ohio App.3d at 372, 629 N.E.2d 481.

*Id.* at * 2-3. Unlike Carter, Carr was trying to communicate to Bradley what he was attempting to do, and when that was unsuccessful, he complied with Bradley's demand to get back in the car. *See also City of Chillicothe v. Lowery*, No. 97 CA 2331, 1998 WL 396316 at *3-8 (Ohio App. 4 Dist. Jul. 13, 1998)(outlining numerous cases demonstrating differences between those cases where disorderly conviction have been reversed and those where the convictions have been upheld).

Defendant Bradley testified as follows:

Q.    And prior to asking the driver to get out of the car, you didn't have any
       conversation with Mr. Carr? Would that be accurate?
A.    No. I believe I advised him that he needed to calm down.
Q.    Prior to asking the driver to exit the car, you believe you advised him of that?
A.    Yes, because he was being somewhat rowdy.

Bradley dep. 11:11-20. In response to a question asking in what was Carr being rowdy,

Bradley testified:

A.    Just being loud, upset that I stopped him for a minor violation. And from what
       the driver said that she picked him up from a bar and she said that he was lit. I'm
       sure he just wanted to go home and not be disturbed in any way.

Bradley dep. 13:23-14:4. Carr's loud speech while Bradley was at the driver's side of the

stopped vehicle–as recounted by the officer–did not include any obscenities or threats.

Before asking the driver to get out of the car and taking her back toward his cruiser to

administer a field sobriety test, Bradley did not instruct Carr to remain in the vehicle.

Bradley Dep. 20:12-15. Bradley acknowledged that prior to Carr exiting the vehicle, he

did not have probable cause to arrest Carr. Bradley dep. 19:2-7.

The DVD of the record traffic stop shows the following:

•     2:04:52. The officer steps away from the car. In his deposition, Bradley

       maintains that he called for back-up, but the video sound is not clear. A

       beeping sound can be heard.

•     2:05:02. Chorniak steps out of the car.

•     2:07:24.  Carr's door opens, and he begins to exit the vehicle.

- 2:07:25. Bradley orders Carr to get back in the car repeatedly as Carr attempts to say something to him.

- 2:07:41. Carr says, "this is bullshit."

- 2:07:43. Officer calls in a "signal five."

- 02:7:48. Carr begins to comply with officer's request.

- 02:7:50. Carr is back in the vehicle.

At no time can Carr be heard threatening the officer, or make any threatening gestures or movements. Carr never approached Bradley. Carr attempted to communicate to Bradley his reason for getting out of the car. From the time Carr began getting out of the vehicle until he complied with Bradley's order to get back in, only 26 seconds elapsed. During that time, Bradley concedes, Carr did not verbally threaten him and did not make any threatening gestures. He got out of the passenger side of the stopped vehicle and stood next to the rear passenger door of that vehicle. He did not advance any further. Bradley Dep. 24:4-10. Carr can be heard on the video saying, "we got a little kid in the car." Bradley did not hear Carr because he was shouting for Carr to get back in the stopped vehicle. Bradley Dep. 21:2-5 and 27:7-19. Although defendants maintain that the basis for plaintiff's arrest was his turbulent behavior, the recording of the traffic stop fails to show conduct on the part of Carr that can be characterized in that manner.

Because the Court concludes that there is no evidence from which a reasonable juror could find that Bradley had probable cause to arrest Carr for a violation of Ohio Revised Code § 2917, the Court must determine whether defendants are entitled to

qualified immunity. Qualified immunity shields government employees from liability if their actions "could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

The law clearly establishes that arrests without probable cause violate the Fourth Amendment. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999)("T]he law [is] clearly established that, absent probable cause to believe that an offense had been committed, was being committed, or was about to be committed, officers may not arrest an individual."). Because there is no evidence from which reasonable jurors could conclude that the officer had probable cause to arrest for Car for violating Ohio revised Code § 2917.11, defendants are not entitled to qualified immunity, and plaintiff is entitled to summary judgment on his claim for false arrest against defendant Bradley.

Carr has not provided any evidence demonstrating that defendants Hurd, Lanning, Norris and Provenzano conspired with Bradley to violate his rights in violation of the Fourth Amendment. As a result, plaintiff's motion for summary judgment is DENIED with respect to these defendants.

## B.     False Imprisonment and Illegal Search and Seizure

A seizure for Fourth Amendment purposes occurs when, by means of physical force or a show of authority, an individual's freedom of movement is restrained. *United*

*States v. Mendenhall*, 446 U.S. 544, 553 (1980). An arrest must be supported by probable cause to believe an individual has committed or is committing a criminal offense. *Beck v. Ohio*, 379 U.S. 89, 91 (1964).

The amended complaint alleges that defendants Hurd, Lanning, Norris and Provenzano discussed and coordinated the plans for arresting Carr. Amended Compl. at ¶ 30. Hurd, Lanning, Norris and Provenzano seized and searched Carr and caused him to be jailed. *Id*. at ¶¶ 37-38. Although plaintiff maintains that these defendants knew that there was no probable cause for his arrest, Carr has not come forth with any evidence indicating that these defendants intentionally, wantonly, and maliciously seized, searched, arrested and imprisoned him unlawfully. Consequently, plaintiff's motion for summary judgment with respect to defendants Hurd, Lanning, Norris and Provenzano is DENIED. Because defendants have failed to produce any evidence with respect to whether Hurd, Lanning, Norris and Provenzano are entitled to qualified immunity under these circumstances, defendant's cross-motion for summary judgment is also DENIED.

### C.     Retaliation in Violation of the First Amendment

To prove a claim for retaliation in violation of the First Amendment, plaintiff must establish the following: (1) plaintiff was engaged in constitutionally protected activity; (2) defendant's adverse action caused plaintiff to suffer an injury that would likely deter a person of ordinary firmness from continuing to engage in that activity;

and (3) the adverse action was motivated at least in part as a response to the exercise of plaintiff's constitutional rights. *Bloch v. Ribar*, 156 F.3d 673 (6th Cir. 1998).

Plaintiff has adequately established that he was engaged in constitutionally protected speech. Carr's criticism of the officer stopping them was constitutionally protected speech. When Carr exited the vehicle he made it known that he thought it was unreasonable for the officer to not let him care for his son, and Carr's statements that Bradley should tell that to his son and "this is bullshit" were also protected speech. Carr attempted to explain why he had exited the vehicle, although Bradley refused to give him the opportunity to do so.

Facing arrest for verbally opposing or challenging police action would likely deter a person of ordinary firmness from engaging in that activity. *See Center for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 822 (6th Cir. 2007)("Deprivation of one's liberty of movement can hardly be classed 'inconsequential;' indeed, the Founders endeavored scrupulously to protect this liberty in the Constitution.").

The arrest was, at least in part, a response to Carr's speech. "Once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the production shifts to the defendant." *Thaddeus-X v. Blatter*, 175 F.3d 378, 399 (6th Cir. 1999)(citing *Mount Healthy City Sch. Dist. Bd. Of Educ. v. Doyle*, 429 U.S. 274 (1977)).

Defendants maintain that the recording of the traffic stop must be considered in conjunction with Carr's behavior when Bradley initially approached the vehicle. In his

21

deposition testimony, Bradley acknowledged that Carr's speech in the car before the

driver stepped out was part of his rationale for arresting Carr.

> Q.     And so what was the probable cause that you felt you had to arrest
>        Mr. Bradley?
> A.     It all started like I said when I was up there talking to Ms. Chorniak
>        in the vehicle advising him he needed to calm down. There was no
>        reason to get rowdy. And you hear me on the video calling for
>        backup because he was getting a little rowdy. That kind of raised
>        my alarm. And then when he did exit the vehicle that caused
>        another alarm and inconvenience. He obstructed my official
>        business with Ms. Chorniak.

Bradley dep. 26:5-16. Bradley testified that the "rowdiness" of Carr's behavior

motivated him to call for back-up assistance and eventually place him under arrest.

Bradley maintains that by getting out of the car, Carr was obstructing official business,

and it was because of this conduct, rather than in retaliation for Carr's speech, that

Bradley arrested him. Disputes "involving proof a defendant's intent seldom lend

themselves to summary disposition," *Center for Bio-Ethical Reform*, 477 F.3d at 823

(quoting *Bloch*, 156 F.3d at 682). Because an issue of material fact exists as to whether

Carr's protected conduct played a part in Bradley's decision to arrest him, plaintiff's

motion for summary judgment is DENIED with respect to his First Amendment claim

for retaliation.

The Court must consider whether qualified immunity applies to plaintiff's claim

for First Amendment retaliation by looking at "whether it would be clear to a

reasonable officer that his conduct was unlawful in the situation he confronted."

*Saucier*, 533 U.S. at 202. The law is well-established that a public official's retaliation

against an individual exercising his First Amendment rights is a violation of § 1983. *Barrett v. Harrington*, 130 F.3d 246, 264 (6th Cir. 1997); *Kinkus v. Village of Yorkville*, Ohio 289 Fed.Appx. 86, 95, 2008 WL 3820555, at *7 (6th Cir. Aug. 13, 2008)("It is well-established that 'the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers.'")(quoting *City of Houston v. Hill*, 482 U.S. 451, 461 (1987). Moreover, a reasonable officer should have known that detaining because of his speech would violate his clearly established First Amendment rights. *Center for Bio-Ethical Reform, Inc.*, 477 F.3d at 824. Consequently, defendants are not entitled to qualified immunity with respect to plaintiff's claim for retaliation for exercising his rights guaranteed by the First Amendment.

## V.   Plaintiff's Motion to Strike and Motion for Reconsideration

Plaintiff's seeks an order striking defendants' cross-motion for summary judgment because the Court's January 7, 2009 Order only gave defendants leave to file a response to plaintiff's motion for summary judgment.  The dispositive motion deadline was October 20, 2008, and defendants failed to a motion at that time. Plaintiff maintains that defendants never provided any reason for why their neglect was excusable. Plaintiff argues that defendants have violated the local rule that requires all extensions be made by motion. Plaintiff makes similar objections in his motion for reconsideration. Because the Court has denied defendant's cross-motion for summary judgment, plaintiff's January 13, 2009 motion to strike defendant's motion for summary judgment (doc. 34) and plaintiff's motion for reconsideration of the Court's Order filed January 7,

2009, and to strike defendants' response to plaintiff's motion for summary judgment (doc. 35) are MOOT.

**VI. Conclusion**

For the reasons stated above, plaintiff Chris A. Carr's October 20, 2008 motion for summary judgment (doc. 27) is GRANTED with respect to his claim for false arrest against defendant Robert C. Bradley and DENIED in part. Defendants Robert C. Bradley, Gregory M. Hurd, Richard L. Lanning, Max B. Norris, II, and Melanie L. Provenzano's January 12, 2009 cross-motion for summary judgment on qualified immunity (doc. 32) is DENIED. Plaintiff's January 13, 2009 motion to strike defendant's motion for summary judgment (doc. 34) and January 15, 2009 motion for reconsideration of the Court's Order filed January 7, 2009, and to strike defendants' response to plaintiff's motion for summary judgment (doc. 35) are MOOT.

s/ Mark R. Abel
United States Magistrate Judge